RICHARDSON *vs.* JUDAH.

*In the matter of the Estate of* SAMUEL N. JUDAH, *deceased.*

THE intestate was the owner of an undivided fourth-part of certain lots of land; and after his decease, one of the tenants in common instituted a suit in the New York Common Pleas for partition. The proceedings were regularly conducted to a decree, the premises sold, deeds given, and the proceeds of sale distributed among the parties. The personal estate having been insufficient to discharge the intestate's debts, a creditor applied for the sale of the real estate of which he died seized, for the payment of his debts, and the administrators were ordered to shew cause why the application should not be granted. The administrators set up the sale in partition and distribution of the proceeds; and it was *Held,* that the administrators, not representing either the heirs or the purchaser, it was not competent for them to raise the objection.

If, on the return of the order requiring the administrators to shew cause, it appears that all the personal estate has been applied to the payment of debts, and that there remain claims unpaid, for the satisfaction of which a sale of the real estate may be made, the Surrogate is bound to issue the second order requiring all persons *interested* in the estate to shew cause against the application. On the return of this last order, the heirs, or parties claiming under them, may intervene and oppose the proceedings.

If, on the return of the order requiring the administrators to shew cause, they allege that other persons besides the heirs are interested, it is proper to direct the service of the second order on such parties, though the statute does not demand such service.

S. B. H. JUDAH, *for the Administrators.*

I. The Surrogate, by 2 *R. S., p.* 100, § 8, is to decide whether there is real estate subject to his order; and the administrators are bound to set out the facts, that a decision may be had.

1st. Whether *there is real estate* that can be affected by the Surrogate's decree.

This question involves the whole merits, and should now be decided.

2d. The Surrogate cannot make an order affecting the property already sold under the decree in the partition and foreclosure suits.

The sales in these suits changed the seisin of the intestate in the lands into assets, and converted the real estate into personal. (*Ellsworth* vs. *Cook*, 8 *Paige*, 643.) On an application like the present, a perpetual injunction was granted against the administrator. (*Brevoort* vs. *McJimsey*, 1 *Edw. Ch.*, 551.)

3d. The intestate held an undivided interest in common in the property with others; his death could not prevent his co-tenants from partition. (2 *R. S.*, 321, § 23, *p.* 329, § 70; *Smith* vs. *Smith*, 10 *Paige*, 470, 473, &c.; *Vanarsdale* vs. *Drake*, 2 *Barb. S. C. R.*, 599.) If the property did not admit of partition, the party applying for partition had a right to have it sold, (2 *R. S.*, 330, § 81; 6 *Johns.*, *C. R.*, 436; 2 *Barb. S. C. R.*, 599); and decree of sale being made by a court of competent jurisdiction, with the proper parties before it, the purchaser takes title free from all after acquired rights of the representatives of the deceased cotenant. (*Harwood* vs. *Kirby*, 1 *Paige*, 469, 472; 2 *R. S.*, 325, § 51, 327, § 66.)

II. The administrators were parties to the suit in partition, and their rights were adjudicated. (3 *Barb. C. R.*, 343; 3 *Johns.*, *C. R.*, 295.)

1st. A notice of lis pendens was filed in the partition suit; and if it had not been, the administrators were representatives of the creditors, and the decree was final against them. (2 *Paige*, 387.)

2d. By the decree in partition, all inchoate or contingent rights were determined. (2 *R. S.*, 318, § 5, *Sub.* 2, § 7; *Ibid.*, 322, § 36; *Jackson* vs. *Edwards*, 7 *Paige*, 387.)

3d. It is too late now to object that any inchoate, con-

tingent, or future interest was not protected by the decree. If at all, such error must be corrected on appeal from that decree. (*Dunham* vs. *Minard*, 4 *Paige*, 441.) The cases of partition and foreclosure are alike. The words of the statute on partition are the most explicit. (2 *R. S.*, 192, § 158.) The Surrogate could only have had concurrent jurisdiction with the Court of Equity had these proceedings been commenced earlier, and the decree and sales being perfected, the whole matter is *res adjudicata.*

4th. The statute, where it allows the Surrogate to order the sale of " so much of the real estate whereof the testator *died seized* " (2 *R. S.*, 103, § 18), does not mean that the right to make such order affixes itself to the land from the time of the intestate's or testate's death, notwithstanding the operation of any other statute on the seisin ; but such provision of the statute is to be fairly construed, so as to harmonize with other cognate statutes. (2 *R. S.*, 3*d ed.*, 875 ; *App.*, 2*d ed.*, 778, § 12 ; *Dwarris on Stat.*, 756, *&c.*, 729, 690 ; 4 *T. R.*, 2 ; *Plow.*, 205 ; 11 *Mod.*, 161 ; 1 *Show*, 491 ; 1 *Jon.*, 105.) The statutes relating to foreclosure and partition form a part of the Revised Statutes as well as that relating to executors and administrators, and must be construed as one law.

5th. The statute contemplates that the real estate remained, at the time of the application for sale, as it did at the time of the intestate's death (2 *R. S.*, 100, § 1) ; and the only persons to whom notice is to be given are the widow, heir, or devisee, and the actual occupants of the land. (§ 2, *&c.*, 6, 7.)

The publication for *all interested* to show cause, extends only to those who claim immediately under such widow, heir, devisee, or occupant.

The Surrogate has no jurisdiction of the purchaser at the partition sale. The powers of the Surrogate are limited by statute. (3 *Barb. S. C. R.*, 341.) The land, by the partition sale, is no longer the estate of the intestate, and the purchasers are " *not parties interested in the* intestate's estate." (§§ 9, 10 *and* 17.)

6th. The sale under the partition decree is not a sale made or procured by the heir within the case of *Mathews* vs. *Mathews*, 1 *Edw., Ch. R.*, 565.

The decree in partition was obtained *in invitum* as against the heir and the administrators, and their several rights have been divested by a competent court, and in pursuance of an existing statute law. (4 *Wend.*, 443.)

7th. If the Surrogate can order a sale, notwithstanding the former sale under the decree in partition, the result will be that the intestate's share is doubled. It has been paid for in full by the partition sale, and it will have the further proceeds of the sale to be decreed by the Surrogate. This fact at once shews the absurdity of the present application.

Lastly : A further proceeding on this application will be idle, as no title can be given under any order of the Surrogate.

The heir is personally liable, if he has received the proceeds of the partition sale.

W. K. THORN, *for Creditors.*

THE SURROGATE. The petitioners apply, as creditors of the intestate, for the sale of his real estate for the payment of his debts. Letters of administration were issued, March 15, 1849, and the accounts of the administrators were duly settled before the Surrogate, March 12, 1851. There not being sufficient personal assets to pay the debts, the present proceeding was instituted, January 7, 1852. The real estate described in the petition as the property of which the intestate died seized, is the undivided fourth-part of several lots of land in the city of New York. On the return of the order to show cause, the administrators set up in bar of the application, that after the death of the intestate, one of the tenants in common of the premises in question instituted a suit in partition in the New York Common

Pleas, to which the administrators, the widow, and the heir at law of the intestate were made parties; that the proceedings were regularly conducted to a decree, the premises sold at public auction, deeds given to the purchasers, and the proceeds of sale distributed between the heir at law and the widow, under the direction of the Court. This state of facts presents the question, whether a sale in partition, under the decree of a Court of competent jurisdiction, of premises in which the intestate had an undivided interest, has the effect of cutting off the right of creditors to have the real estate of the deceased sold for the satisfaction of his debts. There is no controversy that the deceased died seized of certain real estate, and that it must be sold for the payment of his debts, unless a superior title has been acquired by other parties. If there are other parties besides the heir, interested in the estate of which the deceased died seized, they should have, and will have, an opportunity of being heard. If there are no such parties, then there is no pretence of an answer to this application. But I do not think it competent for the administrators to raise that point. They have nothing to do with the real estate. They are merely the formal medium through which the rights of creditors may be enforced against the real estate; but they have no interest in the premises, do not represent the heir or the purchasers, and cannot interpose any defence in their behalf. They may refuse to set on foot proceedings to sell the lands of the deceased for the payment of his debts, and if measures to that end are taken by creditors, they may, on the return of the order to show cause, decline acting, in which case the Surrogate is authorised to appoint a disinterested freeholder to act in their stead. If, on the return of the order to show cause, it appears "that all the personal estate of the deceased, applicable to the payment of his debts, has been applied to that purpose, and that there remain debts unpaid, for the satisfaction of which a sale may be made," the Surrogate is bound to issue the second order, requiring " all persons interested in the estate"

11

to shew cause why the real estate should not be mortgaged, leased or sold. On the ascertainment of the insufficiency of the personal estate, the Surrogate "shall" issue the second order; and, till the return of that order, there is no discretion vested in him (§§ 8, 54.) I think, therefore, it will be time enough to consider the question raised by the administrators, as to the effect of the sale in partition, when the parties in interest come before me and insist upon their title. It would be improper for me to express an opinion at this stage of the proceedings, when the real parties in interest have not yet had an opportunity of being heard. By the terms of the statute it will be competent hereafter for the "heirs," or "any person claiming under them," and "all persons interested in the estate, who shall think proper to oppose," to interpose a defence, and insist upon any proper legal bar to the application. It is not the business or right of the administrators to anticipate such objections—to assume a defence, and claim its decision at this preliminary step. They have discharged their duty in placing before the Court the facts which show there are other parties in interest besides the heir and the widow, and though the statute does not require notice of the next order to shew cause, to be served personally on persons claiming an interest in the premises under the heir, yet, whenever it appears that lands have been sold, either by the heir, or under the decree of a court, such service is very proper, and should be required by the Surrogate.

An order must therefore issue, directing all persons interested in the estate to appear and shew cause why authority should not be given to the administrators to mortgage, lease, or sell so much of the real estate of the intestate as shall be necessary to pay his debts, and a copy of the order must be served on the parties who became purchasers at the sale in partition, so as to afford them an opportunity of contesting the application.